898 So.2d 217 (2005)
Edward A. BEHL, Appellant/Cross-Appellee,
v.
STATE of Florida, Appellee/Cross-Appellant.
No. 2D03-184.
District Court of Appeal of Florida, Second District.
March 16, 2005.
*218 James Marion Moorman, Public Defender, and Allyn M. Giambalvo, Assistant *219 Public Defender, Bartow, for Appellant/Cross-Appellee.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Cerese Crawford Taylor, Assistant Attorney General, Tampa, for Appellee/Cross-Appellant.
CANADY, Judge.
Edward A. Behl appeals the judgments and sentences imposed on him for one count of the capital felony of sexual battery on a child under the age of twelve years[1] (count I) and two counts of the first-degree felony of sexual battery by a person in familial or custodial authority[2] (counts II and III), as well as his designation as a sexual predator.[3] The State cross-appeals the trial court's order suppressing certain evidence.
We conclude that the arguments raised by Behl with respect to his convictions and his designation as a sexual predator are without merit. We therefore affirm those convictions and the sexual predator designation without further comment. In view of our affirmance of Behl's convictions, we need not address the State's cross-appeal.
Behl challenges the assessment of victim injury points for sex penetration on the sentencing guidelines scoresheet, which was used in sentencing for counts II and III. Behl, whose sentences were imposed under the sentencing guidelines[4] in place before the Criminal Punishment Code became effective, contends that the trial court's assessment of victim injury points violated the principles of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), with respect to the Sixth Amendment's requirements for jury findings of facts upon which a sentence is based. We conclude that the trial court erred in scoring sex penetration points for one of the offenses of sexual battery by a person in familial or custodial authority. We therefore reverse Behl's sentences for counts II and III and remand for resentencing utilizing a corrected scoresheet. We affirm Behl's life sentence for count I, which was not affected by the guidelines scoresheet.

I. Background

The felony information against Behl alleged with respect to one of the counts of sexual battery on a person in familial or custodial authority (count II) that Behl committed the offense "by placing the mouth of [Behl] into or in union with the vagina of" the child victim. With respect to the other count of that offense (count III), the information alleged that Behl committed the offense "by placing the finger of [Behl] into the vagina of" the child victim. Jury instructions were given which tracked the allegations of the information. That is, the jury was instructed that in order to convict Behl on the respective counts it would have to determine that the evidence supported the facts alleged in the indictment. The jury returned verdicts finding that Behl was "guilty of Sexual Battery by a person in familial or custodial authority, as charged."
Behl was sentenced under the 1995 guidelines. The Florida Rule of Criminal Procedure 3.991(a) sentencing guidelines scoresheet utilized in imposing sentence on Behl for the two offenses of sexual battery by a person in familial or custodial authority contains the following notation in the portion of the scoresheet relating to victim injury: "Sex Penetration 80 x 2 = 160." It is thus apparent that points were separately *220 assessed for sex penetration with respect to both of the offenses of sexual battery by a person in familial or custodial authority. The scoresheet shows total sentence points of 298. The sentence calculated was for 270 state prison months, with 202.5 minimum prison months and 337.5 maximum prison months. Behl was ultimately sentenced to concurrent prison terms of 337.5 months (28.125 years) for the two offenses.
Behl filed a Florida Rule of Criminal Procedure 3.800(b)(2) motion to correct sentence claiming that it was error for the trial court "to assess points for penetration because this factor was never specifically found by the jury." Behl argued that the trial court's assessment of the points for penetration violated the holding in Apprendi that where the determination of any factor, other than the existence of a prior conviction, causes a sentence to be increased beyond the statutory maximum the existence of that factor must be specifically determined by the jury. He contended that absent points for penetration his maximum recommended guidelines sentence would be 19.7 years. The trial court rejected Behl's claim.

II. Issue on Appeal

Behl argues that the sentences in counts II and III far exceed the applicable maximum sentence under the sentencing guidelines absent points for penetration. He contends that the trial court's determination that penetration occurred violates the Sixth Amendment, based on the principles articulated in Apprendi. The State argues in response that in finding Behl guilty the jury necessarily concluded that penetration occurred. Thus, the State contends, the "sentencing enhancement was based on a factor that was determined by a jury."

III. Analysis

In Apprendi, 530 U.S. at 490, 120 S.Ct. 2348 the Supreme Court held that the Sixth Amendment right to trial by jury  as applied to the states by the Due Process Clause of the Fourteenth Amendment  requires application of this rule: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The court noted "the novelty of a legislative scheme that removes the jury from the determination of a fact that, if found, exposes the criminal defendant to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone." Id. at 482-83, 120 S.Ct. 2348. The Court specifically ruled unconstitutional New Jersey's hate crime enhancement statute which provided for an increased term of imprisonment for certain offenders based on the trial judge's finding, by a preponderance of the evidence, that the offender committed the offense with a purpose to intimidate because of race, color, gender, handicap, religion, sexual orientation, or ethnicity.
The Court applied the principles of Apprendi to the context of capital sentencing proceedings in Ring v. Arizona, 536 U.S. 584, 609, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), holding that the Sixth Amendment does not permit "a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty." "If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact  no matter how the State labels it  must be found by a jury beyond a reasonable doubt." Id. at 602, 122 S.Ct. 2428.
After the trial court in the instant case had rejected Behl's Apprendi claim, the *221 Supreme Court addressed the issue of Apprendi's application to the State of Washington's guidelines sentencing scheme in Blakely v. Washington, ___ U.S. ___, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The defendant in Blakely had been given a sentence exceeding the maximum sentence under the applicable standard sentencing range based on the trial judge's finding that the defendant had acted with deliberate cruelty. Id. at 2536. The Court held that the sentence violated the principles articulated in Apprendi.
Our precedents make clear ... that the "statutory maximum" for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.
Id. at 2537 (citations omitted).
The application of Apprendi's principles to guidelines sentencing schemes was reaffirmed by the Court in United States v. Booker, ___ U.S. ___, 125 S.Ct. 738, 746, 160 L.Ed.2d 621 (2005), which held that the imposition of a sentence under the federal sentencing guidelines based on "additional facts that the sentencing judge found by a preponderance of the evidence" violated the Sixth Amendment. The Court noted that under the federal guidelines, as under Washington's guidelines sentencing scheme, "the relevant sentencing rules are mandatory and impose binding requirements on all sentencing judges." Id. at 749-50. The Court further observed that "[t]he availability of a departure in specified circumstances does not avoid the constitutional issue." Id. at 750.
Blakely and Booker thus hold that under a guidelines sentencing scheme which restricts judicial discretion in imposing sentences, the factors used to calculate the maximum guidelines sentence to which a defendant is exposed must be based either on (1) findings made by the jury, (2) facts admitted by the defendant, or (3) the defendant's prior convictions. The sentencing guidelines under which Behl was sentenced placed legal limitations on the trial judge's exercise of discretion in sentencing. They unquestionably were "mandatory and impose[d] binding requirements on all sentencing judges." Booker, 125 S.Ct. at 749-50; see State v. Matthews, 891 So.2d 479, 488-90 (Fla.2004), ("Under the sentencing guidelines, a narrow range of permissible sentences is determined through a strict mathematical formula. It is then within the trial judge's discretion to sentence the defendant within that narrow range.... The sentencing guidelines limit the discretion of sentencing judges to impose presumptive sentences and only allow departure upon written findings of aggravation or mitigation.") (citations omitted).
Under the Supreme Court's interpretation of the Sixth Amendment, victim injury thus can be used as a sentencing factor only if its existence is determined by the jury or admitted by the defendant. Accordingly, a guidelines sentence imposed at a level that is only permissible because victim injury points were assessed will exceed the "statutory maximum" for Apprendi purposes if the victim injury points were not based on a determination made by the jury or on an admission of the defendant.
*222 Although Blakely and Booker were decided after Behl was sentenced, the rule they articulated with respect to sentences imposed under sentencing guidelines schemes is nonetheless applicable in this direct appeal by Behl of his sentences. "When a decision of [the United States Supreme] Court results in a `new rule,' that rule applies to all criminal cases still pending on direct review." Schriro v. Summerlin, ___ U.S. ___, 124 S.Ct. 2519, 2522, 159 L.Ed.2d 442 (2004) (quoting Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)); see also Wheeler v. State, 344 So.2d 244, 245 (1977) ("The decisional law in effect at the time an appeal is decided governs the issues raised on appeal, even where there has been a change of law since the time of trial.").[5] Accordingly, in analyzing Behl's Sixth Amendment claim we proceed under the current law.
In the instant case, the concurrent sentences of 28.125 years imposed on Behl for the two counts of sexual battery by a person in familial or custodial authority were based on the trial judge's determination  as reflected on the sentencing scoresheet  that each of the offenses involved sex penetration. This determination with respect to count III rested on the jury's verdict that Behl was guilty as charged. As noted above, under count III Behl was charged with the commission of the offense by placing his finger into the vagina of the child victim. The jury's guilty verdict therefore necessarily was based on the jury's factual determination that the commission of count III involved penetration. See Long v. State, 92 So.2d 259, 260 (Fla.1957) ("[W]here an offense may be committed in various ways, the evidence must establish it to have been committed in the manner charged in the indictment."). The eighty points for sex penetration associated with count III were thus assessed "solely on the basis of the facts reflected in the jury verdict." Blakely, 124 S.Ct. at 2537.
The eighty points associated with count II are a different matter. Under count II, Behl was charged with committing the offense by placing his mouth "into or in union with the vagina" of the child victim. Although the act of placing his mouth into the victim's vagina would involve penetration, the act of union with the child's vagina would not involve penetration. Under the pertinent statute, "union" and "penetration" are distinct concepts. § 794.011(1)(h), Fla. Stat. (1997) (setting forth definition of "sexual battery"). "Union permits a conviction based on contact with the relevant portion of anatomy, whereas penetration requires some entry into the relevant part, however slight." Richards v. State, 738 So.2d 415, 418 (Fla. 2d DCA 1999). Count II in effect charged Behl with committing the offense either with penetration or without penetration. The jury's verdict finding Behl guilty as charged of count II thus does not embody a factual determination by the jury that count II involved sex penetration. Furthermore, Behl made no admission concerning sex penetration.
The jury's verdict does, however, embody a determination that count II at least involved sex contact. Whether the offense charged in count II was committed by an act involving penetration or by an *223 act involving union, it necessarily involved contact. See Richards, 738 So.2d at 418. The scoresheet thus should have reflected forty points for sex contact associated with count II, rather than eighty points for sex penetration. The total sentence points on the scoresheet should have been 258 rather than 298, and the maximum prison months should have been 322.5 (26.875 years), rather than 337.5 (28.125 years). The sentences imposed on Behl thus exceeded the maximum guidelines sentence under a corrected scoresheet by fifteen months.
Since Behl was subjected to the sentences of 28.125 years only because the additional points were added to the scoresheet for sex penetration associated with count II, "[t]o reach [the sentences imposed], the judge found facts beyond those found by the jury." Booker, 125 S.Ct. at 751. "[T]he jury ha [d] not found all the facts `which the law makes essential to the punishment,' and the judge [therefore] exceed[ed] his proper authority." Blakely, 124 S.Ct. at 2537 (citation omitted). The Sixth Amendment was violated. Accordingly, Behl's sentence must be reversed. See Whalen v. State, 895 So.2d 1222, 1224 (Fla. 2d DCA 2005) (reversing sentence enhanced due to assessment of penetration points where jury's verdict did "not reflect the findings required by Blakely"). On remand, Behl shall be sentenced using a corrected scoresheet which omits the sex penetration points associated with count II. Since the jury's verdict established that in the commission of count II Behl was at least guilty of sex contact, victim injury points should be assessed for that conduct. The corrected scoresheet shall, therefore, include forty sex contact points for that offense.

IV. Conclusion

Behl's convictions and his designation as a sexual predator are affirmed. His sentences for sexual battery by a person in familial or custodial authority (counts II and III) are reversed, and the case is remanded for resentencing consistent with this opinion. His sentence for count I is affirmed.
Convictions and designation affirmed; sentences affirmed in part and reversed in part; case remanded for resentencing.
DAVIS and SILBERMAN, JJ., Concur.
NOTES
[1] See § 794.011(2)(a), Fla. Stat. (1997).
[2] See § 794.011(8)(b).
[3] See § 775.21(5), Fla. Stat. (1997).
[4] See §§ 921.0001-0016, Fla. Stat. (1997); Fla. R.Crim. P. 3.703.
[5] Cases on collateral review are, of course, a different matter. In Burrows v. State, 890 So.2d 286, 287 (Fla. 2d DCA 2004), we held that Blakely is not "to be retroactively applied on collateral review to sentences that became final before" Blakely was decided. See also Schriro, 124 S.Ct. at 2526 (holding that rule announced in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) "does not apply retroactively to cases already final on direct review").